# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| FAXON SALES, INC., <br><br> Plaintiff, <br> v. <br><br> U-LINE CORPORATION, <br><br> Defendant. | Case No. 17-CV-872-JPS <br><br><br> **ORDER** |

Plaintiff Faxon Sales Inc. ("Faxon") was formerly a distributor of refrigerators and ice makers manufactured by Defendant U-Line Corporation ("U-Line"). In mid-2016, U-Line elected to terminate the parties' relationship as provided in the terms of their distributor agreement. Faxon claims that this termination, made without good cause, amounted to a violation of the franchisee protection laws of several northeastern States. Faxon's theory in this case is that despite express disavowals in the contract of a franchisor-franchisee relationship, the parties entered into such a relationship accidentally. It is this accidental franchise relationship which forms the basis for Faxon's claims.

U-Line has filed a motion to dismiss, arguing that the claims are without merit and that the suit is untimely pursuant to the contract, which provides a one-year statute of limitations for actions arising from it. For the reasons stated below, the Court agrees with U-Line that Faxon's action is time-barred in this Court.

1.  **LEGAL STANDARD**

    Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of complaints which fail to state a viable claim for relief. Fed. R. Civ. P.

12(b)(6). In reviewing the complaint, the Court is required to "accept as true all of the well-pleaded facts in the complaint and draw all reasonable inferences in favor of the plaintiff." *Kubiak v. City of Chicago*, 810 F.3d 476, 480 (7th Cir. 2016) (citation omitted). The statute of limitations, an affirmative defense, cannot be resolved via a motion to dismiss unless the allegations themselves demonstrate that the claim is time-barred. *See U.S. Gypsum Co. v. Ind. Gas Co., Inc.*, 350 F.3d 623, 626 (7th Cir. 2003); *Walker v. Thompson*, 288 F.3d 1005, 1009 (7th Cir. 2002).

2. **RELEVANT FACTS**

Faxon is a Connecticut corporation that operates in the northeastern United States. U-Line is based in Milwaukee. The two companies first encountered each other in the early 1990s, when Faxon took over as a distributor of U-Line refrigerators and ice makers from its predecessor, Appliance Distributors of Ct., Inc. ("ADC").

Three brothers of the O'Brien family owned ADC, which has been dissolved, and they continue to own and operate Faxon. Faxon had two major divisions, one supplying plumbing products and the other distributing appliances, including U-Line's products. By the end of the parties' relationship in 2016, eighty percent of Faxon's appliance-distribution sales were generated from selling U-Line products.

Faxon and U-Line entered into a distributor contract granting Faxon an exclusive right to distribute U-Line products in several areas in the northeastern United States. The most recent iteration of this agreement was executed in 2014.[1] In the contract, the parties agreed that either could

---

[1] The Court can consider the terms of the agreement without transforming U-Line's motion from a motion to dismiss into a motion for summary judgment, since the document is central to the case and Faxon, which attached the document

terminate the relationship without cause on thirty days' notice. (Docket #20-1 ¶¶ 5–6). They further agreed that any disputes "arising out of or relating to this Agreement, or any other aspect of the parties' relationship, shall be commenced no later than one (1) year following the date any such claim arises." *Id.* ¶ 7(d). Finally, the parties agreed that "[n]o franchise relationship is created by the entering into or performance of this Agreement," nor would the parties be "joint ventures or partners," nor would one act as "the agent, employee or fiduciary of the other." *Id.* ¶ 20(e).

The parties coexisted amicably for many decades, but things changed suddenly in 2016. U-Line notified Faxon by letter dated May 30, 2016 that it elected to terminate its relationship with Faxon effective June 25, 2016. In the letter, U-Line stated that "any and all relationships between [U-Line] and [Faxon] shall terminate" as of June 25, 2016, including the relationship "as set forth in their Distributor Agreements." (Docket #20-2 at 1). The letter gave no reason for the termination, and U-Line has never contended that the termination was for cause. The termination went forward as indicated in the letter, and the loss of U-Line products has devastated Faxon's appliance-distribution division. Furthermore, on June 7, 2016, Faxon learned in response to an email it sent to U-Line that U-Line would not repurchase any of its inventory from Faxon. (Docket #20-3).

Faxon filed this action on June 22, 2017, which is more than a year from the date of the termination letter and June 7, 2016 email, but within a year of the effective date of the termination. In the amended complaint, Faxon does not assert any breach of the parties' contract. Rather, it asserts

---

to its complaint, does not challenge its authenticity. *See* Fed. R. Civ. P. 12(d); *Hecker v. Deere & Co.*, 556 F.3d 575, 582 (7th Cir. 2009).

that U-Line violated the following laws by its without-cause termination and its refusal to repurchase inventory: (1) the Connecticut Franchise Act ("CFA"), Conn. Gen. Stat. § 42-133 *et seq.*; (2) the Connecticut Unfair Trade Practices Act ("CUPTA"), Conn. Gen. Stat. § 42-110a *et seq.*; (3) the Rhode Island Fair Dealership Act ("RIFDA"), 6 R.I. Gen. Laws § 60-50-1 *et seq.*; (4) the New York Unfair Trade Practices Act ("NYUTPA"), N.Y. G.B.L. § 349; (5) the Massachusetts Consumer Protection Act ("MCPA"), Mass. Gen. Laws ch. 93A, § 1 *et seq.*; and (6) the New Hampshire Consumer Protection Act ("NHCPA"), N.H. Rev. Stat § 358-A:1 *et seq.*

Among other requirements, the CFA and RIFDA prohibit a franchisor from terminating a franchise relationship without good cause and impose notice and inventory repurchasing obligations on any attempted termination. Conn. Gen. Stat. § 42-133f; 6 R.I. Gen. Laws § 6-50-4(a). The CUPTA prohibits unfair or deceptive business practices, and a claim under this statute can be premised on an underlying CFA violation. Conn. Gen. Stat. § 42-110b; *Bentley v. Greensky Trade Credit, LLC*, 156 F. Supp. 3d 274, 288–89 (D. Conn. 2015). Similarly, the NYUTPA, MCPA, and NHCPA broadly proscribe deceptive and unfair trade practices. N.Y. G.B.L. § 349; Mass. Gen. Laws ch. 93A, § 2(a); N.H. Rev. Stat. § 358-A:2.

3. **ANALYSIS**

    3.1 **Wisconsin's Borrowing Statute**

The Court finds that this action is untimely. To reach that conclusion, the Court must answer a series of questions. The first and easiest question is: whose law should apply to the statute-of-limitations analysis? The Supreme Court has directed district courts exercising diversity jurisdiction—as this Court does in this case—to apply the choice-of-law rules of the states in which they sit. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313

U.S. 487, 496 (1941). Thus, this Court must apply Wisconsin's choice-of-law rules to decide whose statute of limitations applies. *McMahon v. Pa. Life Ins. Co.*, 891 F.2d 1251, 1257 (7th Cir. 1989).[2]

Wisconsin, like many states, has enacted a special choice-of-law rule for potential conflicts between state statutes of limitation. It is called a "borrowing statute," and it is found at Wis. Stat. § 893.07. The statute provides:

> (1) If an action is brought in this state on a foreign cause of action and the foreign period of limitation which applies has expired, no action may be maintained in this state.
>
> (2) If an action is brought in this state on a foreign cause of action and the foreign period of limitation which applies to that action has not expired, but the applicable Wisconsin period of limitation has expired, no action may be maintained in this state.

Wis. Stat. § 893.07. Put simply, Section 893.07 requires that in a case involving a foreign cause of action, the shortest statute of limitations—whether from Wisconsin or the foreign state—must apply. *Terranova v. Terranova*, 883 F. Supp. 1273, 1277 (W.D. Wis. 1995); *Wenke v. Gehl Co.*, 682 N.W.2d 405, 411 (Wis. 2004); *Guertin v. Harbour Assurance Co. of Berm., Ltd.*, 415, N.W.2d 831, 835 (Wis. 1987) ("The manifest intent of the legislature in enacting this borrowing statute was to adopt the shortest possible limitation period for actions litigated in this state potentially subject to more than one statute of limitations.").

---

[2]Faxon says that the Court must "analyze the limitation of actions as if it were the supreme court of the state for each state in which Faxon brings a statutory claim." (Docket #26 at 12). Under *Klaxon*, this is flat wrong. Because Faxon got off the rails early in its statute-of-limitations argument, the remainder of its briefing on the matter is largely unhelpful.

### 3.2 Foreign Causes of Action

This leads the Court to the next questions to be addressed in the limitations inquiry: are the causes of action in this case "foreign," and, if so, whose limitations period is shorter? On the first part, the Court finds that all of Faxon's claims are without doubt "foreign." All of its myriad claims are for violations of rights created by the legislatures of other States. None of them raise questions of substantive Wisconsin law. Although the acts causing the injuries—U-Line's decision to terminate and not to repurchase Faxon's inventory—arguably occurred in Wisconsin, it would be specious indeed to claim that a foreign State's statutory cause of action is not to be considered "foreign." From this Court's research, it appears that no Wisconsin courts have expressly considered the question of how to characterize foreign statutory causes of action, most decisions dealing instead with common-law causes of action, whether sounding in contract or tort, that exist in both Wisconsin and the foreign State. *See, e.g., Abraham v. Gen. Cas. Co. of Wis.*, 576 N.W.2d 46, 54 (Wis. 1998); *Guertin*, 415, N.W.2d at 833; *see also Johnson v. Deltadynamics, Inc.*, 813 F.2d 944, 945 (7th Cir. 1987).

But in *McMahon*, the Seventh Circuit faced an analogous situation. There, a Wisconsin plaintiff entered into an employment contract with a California defendant to perform work in Ontario. *McMahon*, 891 F.2d at 1258. The plaintiff sued on a theory of violation of the obligation of good faith and fair dealing arising from the parties' contract. *Id.* at 1259. While Wisconsin and California both impose such a duty in contracts generally, only California permitted a freestanding cause of action for its breach in employment cases. *Id.* The Seventh Circuit concluded that California's statute of limitations should apply, since the plaintiff's cause of action arose only under foreign law and thus "is truly a 'foreign cause of action'." *Id.*

Page 6 of 17

Likewise, here the specific statutory rights to which Faxon clings arose under the applicable State's own laws, making them genuinely "foreign" in the most fundamental sense of the word.[3]

Moreover, Faxon's claims are, in essence, claims of tortious injury to Faxon's statutory rights. In tort cases, Wisconsin courts have determined that a "foreign" cause of action is one where the injury occurred outside this State. *Guertin*, 415 N.W.2d at 835; *Faigin*, 98 F.3d at 270.[4] In this case, Faxon suffered loss in its home state of Connecticut, or perhaps even in each relevant State for an identifiable sum of loss incurred in that State as a result of U-Line's conduct. Either way, Faxon does not operate in Wisconsin, so none of its loss occurred here. *See Bell v. Employers Mut. Cas. Co. of Des Moines, Iowa*, 542 N.W.2d 824, 833 (Wis. Ct. App. 1995); *Terranova*, 883 F. Supp. at 1278 (finding that "each of these tort claims is a foreign cause of

---

[3]This is true even though Wisconsin has its own unfair practices and fair dealership laws, for though Wisconsin and the other states have analogous rights, there has been no contention that they are coterminous. In fact, Faxon's allegations reveal noticeable differences in the nature of the rights provided by each state and the scope of the available remedies. *See generally* (Docket #20). This Court is not prepared to call each statutory right identical simply because they exist in the same general realm. This fact distinguishes this case from *Office Supply Co., Inc. v. Basic/Four Corp.*, 538 F. Supp. 776, 782 (E.D. Wis. 1982), where the court found that a contract claim was not foreign where Wisconsin and California each allowed for run-of-the-mill breach of contract actions.

[4]It is important to appreciate that when determining what state's substantive law should apply in a particular case, Wisconsin courts assess the parties' contacts with each state and each state's interests in the dispute. *Guertin*, 415 N.W.2d at 834. But in resolving choice-of-law questions about the applicable limitations period, the rules are simple and straightforward, looking to specific locations of certain portions of the relevant conduct. *Id.* at 834–35. The decision to treat limitations questions in this way reflects a policy judgment of the Wisconsin legislature to avoid uncertainty as to such matters and promote expedient resolution of disputes, and hopefully obviate court intervention to answer such questions. *Id.*; *Faigin*, 98 F.3d at 270.

action under § 893.07 because the economic effects were felt only in California, the place of plaintiffs' residence"). The fact that U-Line's injury-producing conduct occurred here is irrelevant to determining the place of injury. *Studio & Partners, s.r.l. v. KI*, No. 06-C-628, 2007 WL 3342597, at *3 (E.D. Wis. Nov. 7, 2007) ("[T]he injury occurs where it is felt rather than where it originates: [t]he [place of injury] rule asks the practical question 'who became poorer and where did they become poorer?'") (internal quotations omitted).

The existence of the parties' contract does not weigh against this conclusion. In breach of contract cases, the Wisconsin Supreme Court instructs that an action is not foreign if the last significant event giving rise to the claim occurred in Wisconsin. *Abraham v. Gen. Cas. Co. of Wis.*, 576 N.W.2d 46, 53–54 (Wis. 1998); *Terranova*, 883 F. Supp. at 1278. In this case, had there been a breach of contract claim, one might argue that U-Line's purported breach emanated from its termination decision, which occurred in Wisconsin. *See CMFG Life Ins. Co v. Credit Suisse Sec. (USA) LLC*, No. 14–cv–249–wmc, 2015 WL 4647000, at *5 (W.D. Wis. Aug. 5, 2015).

Recall, however, that Faxon has not asserted any breach of contract claim against U-Line. In fact, Faxon's theory of the case is that despite express disavowals of a franchise relationship in the parties' agreement, they nevertheless formed an accidental franchise as provided for and protected by certain state laws. Under this theory, it becomes clear that although the relationship originally sprang from a contract, the injury asserted is only to statutory rights, not rights arising from the contract

directly. Thus, each cause of action asserted by Faxon is "foreign" within the meaning of Section 893.07.[5]

### 3.3 The Shortest Limitations Period

This leaves the question of whose limitations period is shorter, the foreign jurisdictions' or Wisconsin's. But within this question, the Court faces another quandary: which limitations period under Wisconsin law should it select for the comparison? Put differently, what is the "applicable Wisconsin period of limitation" under Section 893.07? *See* Wis. Stat. § 893.07(2). Several candidates jump out: (1) the limitations period for claims under the Wisconsin Fair Dealership Law ("WFDL"), which is one year, Wis. Stat. § 893.93(3)(b); (2) the limitations period for claims under the Wisconsin Deceptive Trade Practices Act ("WDTPA"), which is three years, Wis. Stat. § 100.18(b)(3); and (3) the limitations period of one year provided in the parties' contract.[6]

---

[5]Characterizing the statutory claims in this case as different from standard contract claims is also consistent with the policy animating Wisconsin's borrowing statute. The statute "effectuates a Wisconsin legislative choice-of-law policy that the shortest possible limitations period should govern actions litigated here that could have been brought elsewhere, thereby eliminating any incentive plaintiffs might have to forum shop for a more favorable limitations period." *Terranova*, 883 F. Supp. at 1277 (citing *Guertin*, 415 N.W.2d at 835). Assuming for the sake of argument that the proper characterization of Faxon's claims is unclear—and certainly characterization questions within choice of law are not always easy, *see* 63B Am. Jur. 2d Prods. Liab. § 1390—in order to ensure that Wisconsin's policy objectives are achieved, the Court is obliged to rely upon the shortest permissible statute of limitations for these claims.

[6]Like some of the other states at issue in this case, Wisconsin also has its own unfair competition statute, Wis. Stat. § 100.20, but a claim may be made by a private person under this Act only upon the defendant's violation of an order issued by the Wisconsin Department of Agriculture, Trade and Consumer Protection. *See id.*; *Wyatt v. Philip Morris USA, Inc.*, No. 09–C–0597, 2013 WL 4046334, at *5 (E.D. Wis. Aug. 8, 2013). No such order has been cited as relevant to this case. Additionally, another Wisconsin law applicable to franchise

Against the backdrop of well-settled Wisconsin law, the Court concludes that the contractual limitations period must control. Wisconsin courts allow parties to bind themselves by contract to limitations periods shorter than those provided by statute. *State Dep't of Pub. Welfare v. LeMere*, 120 N.W.2d 695, 699 (Wis. 1963); *Lundberg v. Interstate Bus. Men's Accident Ass'n*, 156 N.W. 482, 484 (Wis. 1916); *Keiting v. Skauge*, 543 N.W.2d 565, 567 (Wis. Ct. App. 1995). Parties can do so for contractual, tort, or statutory claims. *See Heimeshoff v Hartford Life & Acc. Ins. Co.*, 134 S. Ct. 604, 611 (2013); *Wechsler v. HSBC Bank USA, N.A.*, 15-CV-5907 (JMF), 2016 WL 1688012, at *4 (S.D.N.Y. Apr. 26, 2016) ("Contractual limitations periods are frequently applied to statutory claims."). "The dominant view in contract law is that contractual limitations periods shorter than the statute of limitations are permissible, provided they are reasonable." *Doe v. Blue Cross & Blue Shield United of Wis.*, 112 F.3d 869, 874 (7th Cir. 1997). This rule is "consistent with the principle of party autonomy that underlies the law of contracts." *Id.*

In this case, the contractual limitations period governs claims "arising out of or relating to this Agreement, or any other aspect of the parties' relationship," (Docket #20-1 ¶ 7(d)), broad language which undoubtedly encompasses Faxon's statutory unfair competition and fair dealership claims arising out of the parties' relationship founded upon the contract, *Town Bank v. City Real Estate Dev., LLC*, 793 N.W.2d 476, 484 (Wis. 2010) (Wisconsin courts seek to ascertain and enforce the true intentions of the contracting parties, primarily by resort to the contract language itself, which is construed according to its plain and ordinary meaning).

---

relationships is the Wisconsin Franchise Investment Law, Wis. Stat. § 553.01, but this regulates the initiation of a franchise relationship, whereas the WFDL controls termination, which is the situation faced here.

The O'Briens, faced with a major contraction of otherwise applicable statutes of limitation, suggest their lack of sophistication as a reason to find the provision unenforceable. (Docket #26 at 13–14). They do so without citation to pertinent authority, and the Court is not persuaded that a family that has successfully run a corporation for decades prior to signing the operative agreement in 2014 is in an unequal bargaining position relative to another family-run corporation. Commercial parties are generally held to their promises, "ensuring that each party receives the benefit of their bargain." *Daanen & Janssen, Inc. v. Cedarapids, Inc.*, 573 N.W.2d 842, 846 (Wis. 1998); *State Farm Mut. Auto Ins. Co. v. Ford Motor Co.*, 592 N.W.2d 201, 206 (Wis. 1999) ("Contract law. . .is based on obligations imposed by bargain, and it allows parties to protect themselves through bargaining."). Because agreements struck between commercial parties generally do not involve large disparities in bargaining power, courts have "no reason to intrude into the parties' allocation of the risk." *E. River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 872–73 (1986). Consequently, it is disingenuous to claim that the O'Briens needed superior sophistication to comprehend the plain text of the contractual limitations period.

Next, Faxon posits that the contractual limitations period is unreasonable because it amounts to a waiver of rights and that, to be enforceable, it needed to be made more prominent in the agreement and more clearly define what was being waived. (Docket #26 at 13–14). This argument fails too. First, a limitations period in a contract is not a waiver of rights—it is simply a time limit on the assertion of those rights. Faxon's cited case, *Atkins v. Swimwest Family Fitness Center*, 691 N.W.2d 334, 339 (Wis. 2005), dealt with a liability waiver for injuries, but Faxon does not

explain the analogy between a waiver of liability and an agreed-upon period in which claims can be filed.

Second, however harsh the limitations period may be, it applies equally to both parties, indicating that it is no more unfair as to Faxon than to U-Line. *See Levin v. Perkins*, 107 N.W.2d 492, 495 (Wis. 1961) (even unequal contractual terms are enforceable where there is adequate consideration). Further, the O'Briens offer no reason, other than their "good faith belief" that their claims did not accrue until June 25, 2016, (Docket #26 at 14), that they did not or could not have filed suit during the applicable time period, *See Chilcote v. Blue Cross & Blue Shield United of Wis.*, 841 F. Supp. 877, 879 (E.D. Wis. 1993). Given the commercial nature of the parties and the transaction, the Court is not convinced that the family's inadvertence constitutes sufficient cause to ignore the language of the contract.

Finally, Faxon argues that the contractual limitations period is unenforceable in light of anti-waiver provisions of the other states' laws, which provide that parties' rights thereunder cannot be waived by contract. (Docket #26 at 12–13). But these are irrelevant, since Wisconsin's borrowing statute points us to Wisconsin law for statute of limitations questions. Because of this, only a Wisconsin anti-waiver provision could have any effect. Wisconsin's own franchise law, the WFDL, does indeed have an anti-waiver provision, but notably the WFDL also provides a one-year limitations period. Wis. Stat. § 893.93(3)(b). This strongly suggests that a one-year limitations period for claims like Faxon's would be viewed as reasonable in Wisconsin courts. Consequently, the Court finds that the one-year period agreed upon by Faxon and U-Line is neither unreasonable nor unenforceable.

The foregoing analysis demonstrates that the parties' agreed limitations period is the proper basis for the Court's comparison between Wisconsin law and the foreign laws' limitations periods. Those foreign statutes of limitation all exceed one year, and thus the one-year contractual limitations period must be applied to Faxon's claims. *See* Conn. Gen. Stat. § 42-110g(f) (three years); *Corsello v. Verizon N.Y., Inc.*, 967 N.E.2d 1177, 1185 (N.Y. 2012) (three years for NYUPTA claims); Mass. Gen. Laws c. 260, § 5A (four years); N.H. Rev. Stat. § 508:4, I (three years); Wis. Stat. § 893.07(2).

**3.4    Claim Accrual**

Having determined that Plaintiff's causes of action are all foreign, that Wisconsin law supplies the shortest statute of limitations, and that the limitations period is one year, the Court must finally analyze when Plaintiff's claims accrued. U-Line asserts that its letter of May 30, 2016, or its email of June 7, 2016, triggered Faxon's claims and, as a result, the claims are untimely. Faxon contends that the effective date of the termination, June 25, 2016, controls, thus rendering its action, which was filed on June 22, 2017, compliant with the contractual limitations period.

The contract does not say much about claim accrual. It simply provides that claims must be made within one year "following the date any such claim arises." (Docket #20 ¶ 7(d)). As a general matter, under Wisconsin law, a cause of action accrues when there is a claim capable of present enforcement. *Effert v. Heritage Mut. Ins. Co.*, 466 N.W.2d 660 (Wis. Ct. App. 1990). Which action—the sending of the notice of termination letter (as well as the June 7, 2016 email about inventory repurchasing) or the actual termination a month later—marks the accrual of Faxon's claims?

This question is best answered by reference to Wisconsin's fair dealership and unfair trade practices statutes, which provide close

analogues of the rights conferred in the foreign statutes relied upon by Faxon. First is the WFDL, which is closely related to Faxon's two claims arising under the Connecticut and Rhode Island fair dealership laws. Under the WFDL, a claim for failure to have good cause for termination usually accrues upon sending the notice of termination, not the effective date of the termination. *Les Moise, Inc. v. Rossignol Ski Co., Inc.*, 361 N.W.2d 653, 658 (Wis. 1985); *Wis. Music Network, Inc. v. Muzak Ltd. P'ship*, 822 F. Supp. 1332, 1335 (E.D. Wis. 1992).[7]

Here, Faxon's claim is that U-Line failed to identify good cause for terminating the parties' relationship. In some cases, conduct occurring between the time of the notice and the effective date of the termination bears on the propriety of the termination. For instance, one company might send a notice to another that it needs to cure identified deficiencies in performance. *See Chili Implement Co., Inc. v. CNH Am., LLC*, 865 N.W.2d 885, 2015 WL 1934520, at *5 (Wis. Ct. App. 2015). In such cases, a claim for termination-without-good-cause depends on "subsequent acts or omissions relating to good cause" after the notice is sent—that is, whether there was a cure. *Id.*

However, Faxon says nothing about U-Line's post-notice conduct. Indeed, from the allegations of the amended complaint, it appears the termination went forward as scheduled. There are no facts alleging that any

---

[7] It would not be illogical to find that Faxon's claims did not accrue until it suffered financial harm in Connecticut; indeed, this the rule in most tort cases. *See Hennekens v. Hoerl*, 465 N.W.2d 812, 816 (Wis. 1991). But the Wisconsin Supreme Court has decided that question differently in this specific circumstance, *Les Moise*, 361 N.W.2d at 658, and this Court is not free to find otherwise. Consequently, Faxon's reliance on a host of out-of-state, non-precedential opinions on the matter of accrual is unavailing. *See* (Docket #26 at 15–17).

post-notice conduct affected whether or not U-Line had good cause for termination. Nor are there any allegations suggesting the notice of termination or the June 7, 2016 email were ambiguous. *See Benson v. City of Madison*, 897 N.W.2d 16, 32 (Wis. 2017). U-Line simply told Faxon that termination would occur on a future date certain, and so it did. Likewise, in the June 7, 2016 email, U-Line unequivocally stated that it would not repurchase Faxon's inventory. The dates of the letter and email were the first dates on which Faxon could have sustained a claim for violations of its statutory rights.

The other pertinent law is the WDTPA, Wis. Stat. § 100.18, which is analogous to the remainder of Faxon's claims arising under consumer protection and unfair practices statutes of Connecticut, Massachusetts, New Hampshire, and New York.[8] Claims under the WDTPA accrue upon the "occurrence of the unlawful act or practice which is the subject of the action." Wis. Stat. § 100.18(11)(b)(3). According to Wisconsin courts, accrual does not depend upon the plaintiff's discovery of the violation or whether he has suffered any injury at the time of the violation. *Selzer v. Brunsell Bros., Ltd.*, 652 N.W.2d 806, 815 (Wis. Ct. App. 2002); *Kain v. Bluemound E. Indus. Park, Inc.*, 635 N.W.2d 640, 645 (Wis. Ct. App. 2001). Thus, like the WFDL,

---

[8]In language and purpose, the NYUTPA claim is probably more closely related to Wisconsin's unfair competition law, Wis. Stat. § 100.20, than it is to the WDTPA. *See* N.Y. G.B.L. § 349. As noted above, however, private rights of action under Section 100.20 are extremely limited. *See supra* note 6. Thus, the Court concludes that the WDTPA accrual framework is a better comparison. Additionally, while Section 100.20 spells out no specific limitations period, it ties private claims to a violation of a regulation promulgated under the statute. This suggests that, like the WFDL and WDPTA, claims under Section 100.20 accrue upon a violation of a particular regulation, not whenever the plaintiff suffers harm.

Faxon's statutory claims that are analogous to the WDTPA all accrued at the moment of U-Line's adverse actions, not at some later date when Faxon finally suffered damages. As a result, all of Faxon's claims accrued either on May 30, 2016, the date of U-Line's notice of termination, or on June 7, 2016, the date of the email concerning repurchasing inventory.[9]

**4. CONCLUSION**

Having tread a long and winding path through choice-of-law rules and the nuances of Wisconsin's borrowing statute, the Court finally reaches its ultimate conclusion: Faxon's claims accrued either on the date of U-Line's notice of termination or its June 7, 2016 email, which renders Faxon's complaint untimely under the applicable one-year limitations period provided in the parties' agreement. As a result, the Court must dismiss this action. At the same time, this Court expresses no opinion on the timeliness of Faxon's claims in the courts of any other State.

Accordingly,

**IT IS ORDERED** that Defendant's motion to dismiss (Docket #22) be and the same is hereby **GRANTED**; and

**IT IS FURTHER ORDERED** that this action be and the same is hereby **DISMISSED**.

---

[9]The Court has emphasized throughout that the claims in this case are not for breach of contract. However, even if one applied the accrual analysis for breach of contract claims, the result is the same. Breach of contract claims accrue at the moment of the breach, not when the injury occurs. *CLL Assoc. Ltd. P'ship v. Arrowhead Pac. Corp.*, 497 N.W.2d 115, 117 (Wis. 1993) ("In Wisconsin, a 90-year line of precedent holds that '[i]n an action for breach of contract, the cause of action accrues and the statute of limitations begins to run from the moment the breach occurs. This is true whether or not the facts of the breach are known by the party having the right to the action.'") (quoting *State v. Holland Plastics Co.*, 506, 331 N.W.2d 320, 325 (1983)).

The Clerk of the Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 31st day of October, 2017.

BY THE COURT:

J. P. Stadtmueller
U.S. District Judge